# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. TAYLOR NELSON PINDER, Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS** <br><br> Case No. 2:21-cr-00218-HCN-DAO <br><br> Howard C. Nielson, Jr. <br> United States District Judge <br><br> FOR PUBLICATION |

Defendant Taylor Nelson Pinder moves to suppress evidence found during a warrantless search of a car he was driving. The court denies Mr. Pinder's motion.

## I.

At about midnight on April 30, 2021, Deputy Colton Brimhall observed a Nissan Altima traveling on U.S. Highway 40 near Heber City, Utah. *See* Dkt. No. 70 at 25:1–27:1. Deputy Brimhall testified that the car was speeding and that its rear license plate was not illuminated as required by Utah law. *See id.* at 27:18–29:6. Deputy Brimhall then initiated a traffic stop. *See id.* at 29:7–10. Mr. Pinder was driving the vehicle, which was registered to Robin Ainsworth, the mother of Sierra Hatch, who was seated in the passenger seat at the time of the stop. *See* Dkt. No. 71 at 212:10–20. It is undisputed that Mr. Pinder had permission from Ms. Ainsworth to drive the vehicle. When asked for his driver's license, Mr. Pinder produced a Utah license that Deputy Brimhall determined belonged to another individual. *See* Dkt. No. 70 at 33:4–34:14, 82:16–24; Gov. Ex. 5.

After Mr. Pinder admitted his identity and his federal supervision status, Deputy Brimhall determined that Mr. Pinder's driver's license was revoked, and that Mr. Pinder was on federal

supervised release for a firearms offense. *See* Dkt. No. 70 at 39:13–20, 46:17–18, 84:13–19; Gov. Ex. 2.2. Deputy Brimhall and his supervisor, Sergeant Dan Wardle, who had arrived at the scene, called Agent Cameron Sinner, the U.S. probation officer assigned to Mr. Pinder, notifying him of the traffic stop and Mr. Pinder's production of another individual's driver's license. *See* Dkt. No. 70 at 40:3–7; Dkt. No. 71 at 182:11–16. The officers discussed the possibility of a federal detainer based on Mr. Pinder's violations of the terms of his supervised release. *See* Dkt. No. 71 at 182:17–183:9. They also discussed the possibility of a search of the vehicle pursuant to the conditions of Mr. Pinder's supervision. *See id.* at 183:14–20.

Shortly thereafter, Mr. Pinder was placed under arrest and secured in the back of Deputy Brimhall's patrol car. *See* Dkt. No. 70 at 98:18–99:2; Gov. Ex. 2. Deputy Brimhall then conducted a search of the portion of the vehicle near the driver's seat. *See* Dkt. No. 71 at 157:4–12. In the driver's side door compartment, Deputy Brimhall located a vape pen that appeared to contain THC and a few bullets. *See* Dkt. No. 70 at 45:17–46:4, 46:11–13. He also found "half of a bong" under the driver's seat. *Id.* at 46:24–46:5.

Deputy Brimhall then proceeded to search the rest of the vehicle. *See id.* at 47:6–8. On the floor of the back seat, Deputy Brimhall discovered a black backpack containing unused needles, 9 mm ammunition, a loaded Glock 9 mm firearm, and a cardboard box containing drug paraphernalia and heroin. *See id.* at 51:8–52:20, 53:5–15. The backpack also contained a lunch bag secured with a combination lock. *See id.* at 53:16–22. After Mr. Pinder and Ms. Hatch both denied ownership of the lunch bag or knowledge of the combination, Deputy Brimhall cut open the bag and discovered various illegal narcotics. *See id.* at 54:21–55:18.

On May 12, 2021, a grand jury returned an indictment charging Mr. Pinder with three offenses: (1) Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C.

§ 841(a)(1); (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. No. 1.

Mr. Pinder moved to suppress the evidence obtained from the vehicle. *See* Dkt. No. 34. The court conducted an evidentiary hearing on Mr. Pinder's Motion to Suppress beginning on February 28, 2022, and concluding on March 14, 2022. *See* Dkt. Nos. 70, 71. The parties then submitted briefing and the court held argument on the motion on June 24, 2022. *See* Dkt. No. 87.

## II.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. To resolve Mr. Pinder's motion, the court must address the constitutionality under this Amendment of four searches or seizures: (1) the initial traffic stop; (2) Mr. Pinder's arrest; (3) the search of the portion of the vehicle near the driver's seat; and (4) the search of the remainder of the vehicle, including the backpack and lunch bag found on the back seat floor.

### A.

The court starts with the initial traffic stop. Under Tenth Circuit precedent, "a traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). The court's "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)).

Here, Deputy Brimhall testified that he estimated, based on his experience and observation, that the vehicle was traveling above the posted speed limit, *see* Dkt. No. 70 at 113:17–114:2, which varied between 55 and 65 miles per hour, *see id.* at 26:7–15. He further testified that his radar indicated that the vehicle was traveling 70 miles an hour, or slightly faster, though he did not record and could not recall the precise speed. *See id.* at 28:12–22, 113:7–11. Finally, Deputy Brimhall testified that he observed that the vehicle's rear license plate was not illuminated. *See id.* at 27:24–29:6.

Under Utah Code § 41-6a-601, traveling in excess of the posted speed limit constitutes a traffic violation. And Utah Code § 41-6a-1604(2)(c) requires that drivers "illuminate with a white light the rear registration plate." If Deputy Brimhall's testimony is credited, he thus had "reasonable articulable suspicion" that both a traffic violation and an equipment violation were occurring.

Based on its review of the evidence and its observation of Deputy Brimhall's demeanor while testifying, the court credits his testimony that he observed these violations. It is true that Deputy Brimhall did not specifically note the speeding violation in his incident report or probable cause statement. But video footage from Deputy Brimhall's body camera contains contemporaneous statements by Deputy Brimhall to Mr. Pinder, Ms. Hatch, and Sergeant Wardle that he had observed the vehicle traveling in excess of the posted speed limit. *See* Gov. Ex. 2.

The court likewise credits Deputy Brimhall's testimony that he observed the vehicle traveling without its rear license plate illuminated. *See* Dkt. No. 70 at 27:24–29:6. To be sure, the court cannot determine from the video footage whether or not the license plate was illuminated because the headlights of Deputy Brimhall's car are shining on the plate. *See* Gov. Ex. 1. But Deputy Brimhall's testimony is corroborated by his incident report, his testimony, and his

4

contemporaneous statements to Mr. Pinder and Ms. Hatch that were captured by his body camera. *See* Dkt. No. 70 at 30:6–31:21; Gov. Ex. 2; D. Ex. 23. Deputy Brimhall also initially told Sergeant Wardle that he had stopped the vehicle for speeding and having no "taillights"—he did not mention the unilluminated license plate. *See* Gov. Ex. 2.2. At the evidentiary hearing, however, Deputy Brimhall testified that he misspoke during this conversation with Sergeant Wardle and "meant license plate lights"—not "taillights." Dkt. No. 70 at 38:7–13, 87:18–21. This testimony is similarly corroborated by the incident report and Deputy Brimhall's statements to Mr. Pinder and Ms. Hatch on the night of the stop. *See* Gov. Ex. 2; D. Ex. 23. Finally, when Deputy Brimhall told Mr. Pinder and Ms. Hatch the reasons for the stop, Mr. Pinder did exclaim: "My license plates lights are really out? I swore I just fixed them." Gov. Ex. 2.1. But even if Mr. Pinder had fixed (or attempted to fix) the rear license plate lights recently, it does not follow that they were operational at the time of the traffic stop.

Because Deputy Brimhall had "reasonable articulable suspicion" that both a traffic violation and an equipment violation were occurring, the court concludes that the initial traffic stop did not violate the Fourth Amendment.

**B.**

The court next addresses Mr. Pinder's arrest. Because arrests are seizures of persons within the meaning of the Fourth Amendment, that Amendment requires that arrests be reasonable under the circumstances. *See Payton v. New York,* 445 U.S. 573, 585 (1980). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (citing *Atwater v. Lago Vista,* 532 U.S. 318, 354 (2001)).

5

> Under Utah Code § 76-8-507(2),
>
> [a] person commits a class A misdemeanor if, with the intent of leading a peace officer to believe that the person is another actual person, he gives the name, date of birth, or address of another person to a peace officer acting in the lawful discharge of the peace officer's duty.

And Utah Code § 77-7-2(2) authorizes a law enforcement officer to arrest a person without a warrant if the officer has reasonable cause to believe that the person committed a felony or class A misdemeanor.

Deputy Brimhall testified that he "noticed immediately" obvious and significant differences in appearance between Mr. Pinder and the individual shown on the driver's license presented by Mr. Pinder. Dkt. No. 70 at 33:25–34:3. This testimony is corroborated by Deputy Brimhall's contemporaneous exclamation—which he made upon returning with the license to his car, and which is captured by his body camera—that "there's no way that is him!" Gov. Ex. 2.

In addition, Mr. Pinder was unable to identify the last four digits of the Social Security number of the individual to whom the driver's license belonged. *See* Dkt. No. 70 at 36:6–13. Mr. Pinder then admitted that he was not the individual depicted on the drivers' license and provided Deputy Brimhall his real name. *See* Gov. Ex. 2.2.

Under these circumstances, the court has little difficulty concluding that Deputy Brimhall had probable cause to believe that a crime had been committed in his presence and that he was authorized to arrest Mr. Pinder for that crime under Utah law. It follows that Mr. Pinder's warrantless arrest was reasonable and thus did not violate the Fourth Amendment.

## C.

The court turns next to the search of the portion of the vehicle near the driver's seat. The Supreme Court has established "the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth

Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id*. Pursuant to this exception, the police may search the passenger compartment of a vehicle when arresting a recent occupant if either (1) "the arrestee is within reaching distance of the passenger compartment at the time of the search," or (2) "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

Mr. Pinder was not "within reaching distance of the passenger compartment at the time of the search." To the contrary, he was handcuffed and secured in the back of the Deputy Brimhall's patrol car at this time. The search thus cannot be justified under this part of the rule in *Gant*. Nevertheless, the court concludes that at the time of the search, it was "reasonable to believe the vehicle contain[ed] evidence of the offense of arrest."[1]

**1.**

To determine "Fourth Amendment reasonableness," courts "ask whether the circumstances, viewed objectively, justify the challenged action." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (cleaned up).

---

[1] Mr. Pinder argues that "the first prong of *Gant* . . . [is] determinative of the second prong." Dkt. No. 88 at 1. But the authorities he cites for that proposition either did not involve a vehicle search, *see United States v. Knapp*, 917 F.3d 1161 (10th Cir. 2019) (search of Ms. Knapp's purse); *United States v. Shakir*, 616 F.3d 315 (3d Cir. 2010) (search of Mr. Shakir's bag), or did not implicate the second part of the rule in *Gant*, *see United States v. Davis*, 997 F.3d 191 (4th Cir. 2021) (arrested for eluding officers). The court agrees with the Third Circuit that "if *Gant* is construed to forbid all container searches after a suspect is handcuffed or held by police, it would . . . effectively eliminate a major element of the search-incident-to-arrest doctrine." *Shakir*, 616 F.3d at 320. Such a reading cannot be reconciled with the Supreme Court's clear articulation of *two* bases for a search incident to an arrest in cases involving vehicles—not one.

Here, Mr. Pinder was arrested for presenting another person's driver's license to Deputy Brimhall and thus giving "the name, birth date, or address of another person to a peace officer acting in the lawful discharge of [his] official duties"—all "with the intent of leading a peace officer to believe that [he was] another actual person." Utah Code § 76-8-507(2). The court has little difficulty concluding that Mr. Pinder's actual driver's license would be probative evidence of this crime because it would demonstrate that he was not in fact the individual depicted on the driver's license he presented to Deputy Brimhall. Certainly, this fact "is of consequence in determining" Mr. Pinder's guilt under the statute. FED. R. EVID. 401(b). And just as certainly, Mr. Pinder's actual driver's license would make this "fact more . . . probable than it would be without the evidence." FED. R. EVID. 401(a).

In addition, "the passenger compartment of a car is by custom and necessity a common repository for motor vehicle-related documents," *United States v. Mensah*, 737 F.3d 789, 795 (1st Cir. 2013) (cleaned up), and people commonly keep their drivers' licenses in the vehicle they are driving. The court thus concludes that under the circumstances presented here, an objectively reasonable police officer would believe the vehicle contained evidence of the offense of arrest—namely, Mr. Pinder's actual identification. It follows that the search of the portion of the vehicle near the driver's seat was a constitutionally valid search incident to arrest. *See Gant*, 556 U.S. at 351.[2]

---

[2] During the evidentiary hearing, defense counsel argued that the reasonableness of the police officer's search here should be "determined in part by their intent to want to conduct that search." Dkt. No. 70 at 101:24–102:1. The Supreme Court, of course, has "almost uniformly rejected invitations to probe subjective intent" in Fourth Amendment search cases. *Ashcroft*, 563 U.S. at 737. And in all events, whatever his subjective understanding of the scope of his authority, the evidence makes clear that when he searched the portion of the vehicle near the driver's seat, Deputy Brimhall believed he was conducting a search incident to arrest. *See* Dkt. No. 70 at 41:22–42:7.

**2.**

Mr. Pinder contends that this conclusion is foreclosed by various precedents, including *Gant* itself, *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), *United States v. Ruckes*, 586 F.3d 713 (9th Cir. 2009), and the Supreme Court's decision in *Davis v. United States*, 564 U.S. 229 (2011). The court disagrees.

In the first three cases—*Gant, McCane,* and *Ruckes*—the defendants were arrested for driving with suspended licenses. *See Gant*, 556 U.S. at 335 ("Rodney Gant was arrested for driving with a suspended license."); *McCane*, 573 F.3d at 1039 ("Officer Ulman arrested McCane for driving with a suspended license."); *Ruckes*, 586 F.3d at 715 ("Ruckes's suspended license offense warranted his arrest."). The court concludes that, under *Gant*, the offense of driving with a suspended license differs materially from the offense for which Mr. Pinder was arrested—presenting another person's identifying information to a peace officer with the intent of passing oneself as that other person.

For the reasons already explained, Mr. Pinder's actual driver's license was probative evidence of the crime for which he was arrested. By contrast, it is difficult to see how the drivers' licenses of the defendants in *Grant*, *McCane*, and *Ruckes* could be probative of the crime of their arrest because a driver's license does not itself indicate whether it has been suspended. Rather, the evidence of that fact would be contained in the records of the relevant state agency.

To be sure, the defendant in *Davis* was arrested for a crime similar to that at issue here— "giving a false name to police" during a routine traffic stop. 564 U.S. at 235. The police then conducted a search incident to arrest, which the district court upheld applying Supreme Court precedent as it then existed. *See id.* at 241. While the defendant's appeal was pending, the

Supreme Court decided *Gant*. *See id.* at 244. The Eleventh Circuit held that the search was unreasonable under *Gant*, but because the arresting officers acted in accordance with then-valid precedent, the court invoked the good-faith exception to the exclusionary rule and affirmed the defendant's conviction. *See United States v. Davis*, 598 F.3d 1259, 1265 (11th Cir. 2010).

The Supreme Court granted review on whether the good-faith exception to the exclusionary rule applied, but *not* on the constitutionality of the search incident to arrest. *See Davis*, 564 U.S. at 239; Petition for Writ of Certiorari at 5, *Davis*, 564 U.S. 229 (2011) (No. 9-11328), 2010 WL 2937720, at *i. And in affirming the Eleventh Circuit's decision, the Supreme Court rested its holding squarely on the good-faith exception to the exclusionary rule. *See Davis*, 564 U.S. at 241.

The Court did state in passing that "[a]lthough the search turned out to be unconstitutional under *Gant,* all agree that the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Id.* at 239–40. But the Court did not grant review of the question whether the search was constitutional, the parties did not brief this question, and the Court did not analyze or—apart from the conclusory statement just quoted— even address this issue. For all these reasons, and given that the Court's holding rested entirely on the good-faith exception, this court has little difficulty concluding that the Supreme Court's passing statement that "the search turned out to be unconstitutional under *Gant*" is dictum that is not controlling here.

### 3.

By contrast, other courts that have actually analyzed whether a search incident to arrest may be conducted under the second part of the *Gant* test when an individual is arrested for providing false identifying information to a police officer have reached the same conclusion the

10

court reaches here. For example, in *United States v. Campbell-Martin*, the defendant was arrested "for providing false identification information" to the Iowa State police. 17 F.4th 807, 812 (8th Cir. 2021). The court held that the police in that case were permitted to conduct a warrantless search the defendant's car and backpack incident to the defendant's arrest because, under *Gant*, it would be "reasonable" for police "to believe that [a] vehicle and [a] backpack contained evidence of the offense of providing false identification information." *Id.* at 816.

Similarly, in a case from this court, a defendant was arrested for falsely identifying himself to the police officer who pulled him over. *See United States v. Gomez*, No. 2:17-CR-420-RJS, 2018 WL 2745240, at *1 (D. Utah June 7, 2018). In denying the defendant's motion to suppress, Chief Judge Shelby concluded that the police "had an objective reason to believe evidence of Mr. Gomez's true identity would be found in the car." *Id.* at *6. The court held that this objectively reasonable belief was "sufficient under *Gant*" to justify a warrantless "search for relevant evidence of the crime of arrest." *Id.* (cleaned up).[3]

Other state and federal courts have reached the same or similar conclusions under *Gant*. *See State v. Hargis*, 756 S.E.2d 529, 537 (Ga. 2014) ("Having probable cause to arrest Hargis for possession of a false identification document, the investigator had reason to believe that evidence of *that* crime might be found in the vehicle in which Hargis had been arrested only minutes earlier."); *Deemer v. State*, 244 P.3d 69, 73 (Alaska Ct. App. 2010) ("Given these circumstances,

---

[3] Chief Judge Shelby's primary holding was that the search was reasonable because the defendant had voluntarily consented to it. *See id.* at *4. Although Mr. Pinder argues otherwise, Chief Judge Shelby's conclusion that a search incident to arrest was justified is not dictum. Rather, the defendant in *Gomez* argued that his consent was not voluntary because he was falsely told by the police that if he did not consent, the police could search anyway. *See id.* at *6. In the course of rejecting this argument, Chief Judge Shelby held that the statement that the police could search without the defendant's consent was in fact true because a warrantless search incident to arrest was justified based on the facts of the case. *See id.*

11

the troopers had sufficient reason to believe (under *Gant*) that Deemer's vehicle contained evidence of her crime of falsely identifying herself."); *Armstead v. Commonwealth*, 695 S.E.2d 561, 566 (Va. Ct. App. 2010) ("In short, the officer had probable cause to arrest Armstead for providing false identity information in violation of Code § 18.2–186.3. It was 'reasonable to believe' that Armstead's vehicle 'might' contain evidence of that crime." (citation omitted)); *cf. Mensah*, 737 F.3d at 795 ("It would thus be reasonable for the officers to believe that [the defendant] would have both licenses readily available in his vehicle."); *United States v. Alexander*, 467 F. App'x 355, 363–64 (6th Cir. 2012) (affirming district court's holding that even though the police "had already been given a false identification by [the defendant] and had found a firearm on his person; the officers properly searched the passenger compartment for evidence incident to [the defendant]'s arrest. . . . The recent case of *Arizona v. Gant* only strengthens the district court's holding in the instant case").

**4.**

Mr. Pinder also argues that even if his driver's license may have been probative evidence of the crime of his arrest, it was not needed because he had already confessed, and Deputy Brimhall had already confirmed, Mr. Pinder's true identity. *See* Dkt. No. 84 at 3.

The court is not aware, however, of any controlling authority that limits the amount of evidence the Government may gather of a crime, let alone restricts the Government from gathering any additional evidence once the defendant believes (or a court concludes) the Government has sufficient evidence to prove its case at trial. Nor does the court believe the Constitution imposes any such rule. Rather, the court agrees with the Eighth Circuit, which explicitly rejected the same argument in the same context: "Nothing in *Gant* prohibits the police from searching for additional evidence of an offense." *Campbell-Martin*, 17 F.4th at 816.

Other courts have also rejected arguments similar to that raised by Mr. Pinder here. *See United States v. Edwards*, 769 F.3d 509, 515 (7th Cir. 2014) (holding that police may search a vehicle for evidence of the car's ownership as an incident to an arrest for driving without the owner's consent even though the defendant had already admitted to the offense); *United States v. Donahue*, 764 F.3d 293, 303 (3d Cir. 2014) (holding that although already acquired "evidence might have lessened the *need* for a search," it was still "lawful" for police to search for additional corroborating evidence in the vehicle as a search incident to arrest); *Alexander*, 467 F. App'x at 363–64 (holding that even though police "officers had already been given a false identification by [the defendant] and had found a firearm on his person . . . , the officers properly searched the passenger compartment for evidence incident to [the defendant]'s arrest").

### 5.

To be sure, Mr. Pinder's arguments are supported by the Eleventh Circuit's decision in *United States v. Davis*, which, as explained, held unconstitutional a search incident to an arrest for giving a false name to police during a traffic stop. *See* 598 F.3d at 1263. The Eleventh Circuit specifically explained that the defendant "was arrested for an offense for which police could not expect to find evidence in the passenger compartment, because [the officer] had already verified [the defendant]'s identity when he arrested him for giving a false name." *Id*. (cleaned up).

In *Davis*, however, the search "took place a full two years before" the Supreme Court's decision in *Gant*, the district court ruled on the motion to suppress before that decision, the Supreme Court decided *Gant* "[w]hile Davis's appeal was pending," and the Eleventh Circuit issued its decision in the immediate aftermath of that decision. *Davis*, 564 U.S. at 235–36. The Government thus lacked any opportunity to develop a record supporting the constitutionality of

13

the search under the new rule outlined in *Gant*, and the Eleventh Circuit had little occasion to analyze carefully the constitutionality of the search before it under this new decision.

In all events, this court finds the Eleventh Circuit's reasoning in *Davis* unpersuasive and will not follow it here.

*   *   *

For all of these reasons, the court concludes that the warrantless search of the portion of the vehicle compartment near the driver's seat was a constitutional search incident to arrest.[4]

**D.**

Finally, the court addresses Deputy Brimhall's decision to search the entire vehicle, including the backpack and lunch bag found on the back seat floor, after finding the THC vape

---

[4] Even if this search was not justified as a search incident to arrest, it was likely justified in light of Mr. Pinder's conditions of supervision. In particular, Standard Condition 14 of Mr. Pinder's supervised release agreement provides that: "You must submit your person, residence, office or vehicle to search, conducted by the probation office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release." Case No. 2:17-CR-156, Dkt. No. 60 at 4. As the Tenth Circuit has explained, "[i]n many cases, the police may arrest a probationer or search a probationer's premises without a warrant at the behest of the parole officer." *United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996).

In resisting this conclusion, Mr. Pinder argues that the search here was not requested by Mr. Sinner. Agent Sinner testified, however, (1) that he "had serious concerns about why [Mr. Pinder] was using an ID that did not belong to him at 1:00 in the morning," Dkt. No. 71 at 183:7–9; (2) that he told Deputy Brimhall and Sergeant Wardle "that [Mr. Pinder] did have a search clause and so if they were unable to use those other avenues, then they could do a search to assist the probation office," *id*. at 183:18–20, that "[t]hey had the authority to assist [the probation] office in a search," *id*. at 188:15, and that he "was interested in them searching the vehicle if they were unable to arrest [Mr. Pinder] and search incident to arrest," *id*. at 188:18–20; (3) that Deputy Brimhall and Sergeant Wardle "did have [his] authority if they chose to do a search," *id*. at 189:1; and (4) that he viewed the search "as an assist for federal probation," *id*. at 190:3–6.

Even if the search was not requested by Agent Sinner, moreover, it still may have been justified given that Mr. Pinder's condition of supervised release "significantly diminished [his] reasonable expectation of privacy." *United States v. Knights*, 534 U.S. 112, 119–20 (2001).

14

pen, ammunition, and drug paraphernalia. It is well settled that, given the "ready mobility" of vehicles, *California v. Carney*, 471 U.S. 386, 390 (1985), and "the pervasive regulation of vehicles capable of traveling on the public highways," *id.* at 392, the Fourth Amendment permits law enforcement officers to "search an automobile without having obtained a warrant so long as they have probable cause" to believe the vehicle contains contraband, *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). It is likewise settled that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search," including "*all* containers within a car, without qualification as to ownership." *Wyoming v. Houghton*, 526 U.S. 295, 301, 307 (1999).

Here, the court readily concludes that the discovery of a vape pen containing THC, ammunition, and drug paraphernalia near the driver's seat provided Deputy Brimhall and his colleagues probable cause to believe the vehicle contained contraband. These officers were thus justified in searching the remainder of the vehicle, including the backpack and lunch bag, which were certainly "capable of concealing" illegal substances, drug paraphernalia, or firearms.

*       *       *

For these reasons, the court concludes that the traffic stop, arrest, initial search of the driver's area, and subsequent search of the entire car and its contents, including the backpack and lunch bag, did not violate the Fourth Amendment. Mr. Pinder's motion to suppress is **DENIED**.

**IT IS SO ORDERED**.

Dated this 4th day of August, 2022.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge